BREAUX, C. X
Plaintiff claims of the defendant an amount of $3,045.63, with interest from the date stated in plaintiff’s petition, and fee of attorney on principal and interest.
Plaintiff was the lessor of L. & S. Sommer and M. A. Taylor of land described in the petition, for a term of two years, beginning January 1, 1905, and ending December 31, 1906.
For brevity, the firm will be designated as the Sommer Company.
The Sommer Company is insolvent; worth nothing.
For rental under this lease, the firm became indebted to plaintiff in the sum before stated.
The company, in 1906, was very much in need of funds to plant and cultivate its crop on the leased place.
It made application to the Louisiana State Bank for a loan of $6,000.
The bank was agreeable provided the lessee obtained from the Raccourci Company, lessor, a waiver of the lessor’s lien and privilege, which it held on the crop to secure its rental for the year 1906.
The lessor consented.
A waiver was drawn.
As it is important, we insert it here:
“Now, in order to further secure the Louisiana State Bank, and to better secure the payment of said loan when due, the Raccourci Planting Company, owners and lessors of the said described plantation, situated in the parish of West Feliciana, acting herein,, through its undersigned duly authorized president, hereby waives and renounces in favor of the Louisiana State Bank its lien and privilege as lessor of said plantation upon all crops of cotton, cotton seed, corn, peas and hay, produced by the Sommer Company on said plantation during the year 1906, to the full amount of six thousand dollars, provided all cotton marketed from said plantation shall be shipped to J. Weis & Co. of New Orleans, or to H. & C. Newman of. the same city.”
This waiver was signed by the Sommer Company.
Although it was not signed by the bank, it was its beneficiary, and, besides, the president refers to it in one or two of his letters.
Advances were made by the 1st of July of that year.
The lessees found that they did not have sufficient funds to continue in cultivating the crop. A loan became quite necessary in order to enable them to cultivate the crop.
In their financial embarrassment, they made application to the Louisiana State Bank for an additional amount, which the bank declined to entertain.
The president of the bank suggested to them to call on some other bank or on Puckett & Mays, who were anxious to secure cotton for their business.
The Sommer Company called on the latter firm, which made a loan to the Sommer Company for $2,000. (
A note was drawn for that amount, which the Sommer Company signed, and Puckett & Mays indorsed.
The note was discounted by the bank, and the amount was placed to the credit of the Sommer Company with the understanding, quoting from the testimony of a member of the firm of Puckett & Mays:
“That they were to ship us cotton to cover it.”
Plaintiff avers: That the motive of Puckett & Mays in making the loan in the form adopted, and indorsing the note, was the handling of the cotton crop of the Sommer Company.
That the bank was aware of the fact.
It charges, furthermore, that the bank knew at that time the result .would be that, in order to carry out the agreement with Puckett & Mays, it would be necessary to divert the crop from the firms of Weis or Newman, mentioned in the waiver, in connection with the understanding that the crop was to be shipped to one or the other.
*1077 That, in this respect, by implication at least, the agreement of waiver with the proviso stated was violated, or would inevitably be violated.
The plaintiff charges bad faith on the part of the officers of the bank, made evident, it says, because no notice whatever was given it of the execution of the note indorsed by the firm of Puckett & Mays.
Furthermore, plaintiff urges, in this connection, that 31 bales of cotton were delivered to Puckett & Mays, of which delivery the bank must have known all about.
In all this it appears that the proceeds of the crop were not sufficient to pay the $6,-OOO advanced by the bank and the $2,000 advanced by Puckett & Mays through the bank.
Plaintiff alleges: That the delivery of the 31 bales of cotton to Puckett & Mays deprived it to that extent of the value of these .bales, to which, plaintiff contends, it was'entitled.
That the bank ought to be permitted to hold $1,500.57, representing the net proceeds of 31 bales. That the cotton was diverted and shipped to other firms to an amount of about $2,000, all of which plaintiff alleges was in violation of the condition upon which it waived its lien and privilege upon the crop of the Sommer Company.
That this waiver contained a substantial condition which all parties should respect.
That the purpose of the waiver was to enable plaintiff, to a reasonable extent, to follow the cotton shipped and to realize from its proceeds the rental due. Of this they were deprived by sending the crop to other merchants.
The defendant bank says, in answer, that it has complied with the conditions upon which the advances were made, and has violated no agreement and assumed no liability for the payment of rent to the plaintiff, as it made no promise in that respect. That its officers did not even know how much rent was to be paid by the Sommer Company to the plaintiff.
Defendant bank claims to have only exercised its right as a creditor; that it was not plaintiff’s agent and had no control over the crops raised and felt no interest in the crop save as to the amount of $G,000, as it was amply secured by the $2,000 and the indorsement.
The contention of the bank is, also: That the stipulation about delivering to Weis or Newman was one in regard to which it had no concern, particularly after it had collected its advances. That, if the president of the bank made any damaging agreement, it was ultra vires, as he did not have the approval of the board of directors of the defendant bank.
That, at any rate, the bank was not bound to pay rent.
We will mention here that there were 17 bales of cotton collected after the bank and Puckett & Mays had been paid. They had remained in the field. They were picked and became plaintiff’s property. It realized a small amount in part payment of the rental.
As relates to the $8,000: We have not discovered that there was a legal tie binding-on the defendant.
Unless one in some way binds himself for another, he cannot be made liable.
But it is very evident, from any point of view, that plaintiff has not been prejudiced in so far as relates to the $6,000.
The bank has only received its own, and to this the plaintiff has consented.
At bar, it was admitted that this was an action sounding in damages.
There can be no damages for which the defendant bank can be held. Not the least prejudice has been done to plaintiff in this respect.
[1] If plaintiff had chosen, it could have *1079 kept the cotton in its possession; but it did not interpose any objection on that part of the crop which went to pay a debt in favor of which plaintiff had'waived its right.
It has not a particle of ground upon which to stand as relates to the amount before stated.
The receiving of this cotton to satisfy that amount did not abrogate or violate the contract so as to prejudice and cause loss to the plaintiff.
Plaintiff has divided its claim into two.
[2] To wit, first, that the bank had no right to the use of the amount of $6,000 even for the purpose of repaying itself for this amount advanced, because the agreement before mentioned to ship to certain designated commission merchants was binding on all parties.
We have already decided that point adversely to plaintiff’s contention.
Now as to the second of the divided claim urged, that, after the payment of the $6,000 with interest, there remains $1,717.73, which, saj's the plaintiff, the officers of the bank paid without authority to Puckett & Mays, and to which they in consequence have no right.
The contention at this point is, in regard to this second division, that the amount was in the bank as a result of an understanding and agreement between the bank and the Raceourci Company.
Had that proposition been maintained by proof, a different conclusion would be arrived at by us. But we have not found that it is maintained. The bank was not the agent of the Raccourei Company, and is not liable for a claim sounding in damages against it, a third person.
The debtor, Sommer Company, shipped the cotton and violated the agreement, not the bank; it paid the proceeds to creditors with the consent of the debtors.
The judgment is therefore affirmed.